UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSE ORTEGA GUTIERREZ,

        Petitioner,

        v.

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION CENTER,
US ATTORNEY GENERAL,

        Respondents.

_____/

Case No. 2:26-cv-1366-KCD-DNF

## **ORDER**

Petitioner Jose Ortega Gutierrez is a Cuban national who arrived in the United States in 1995 and was released on parole. He was then convicted of several violent crimes (including attempted second-degree murder) and issued a final order of removal. (Doc. 7-1 at 2.)[1] Immigration and Customs Enforcement ("ICE") could not deport him at the time, so he was released on an order of supervision. (Doc. 7-2 at 1.) While under supervision, he committed more crimes and was incarcerated. (Doc. 7-1 at 2; Doc. 7-3.)

On March 12, 2026, ICE revoked Gutierrez's supervision and detained him to execute the removal order. (Doc. 7-1 at 2; Doc. 7-4.) The next day, he was served with a notice of revocation for violating the condition of his release and afforded an interview regarding the revocation. (Doc. 7-2.) This

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

lawsuit seeking a writ of habeas corpus followed. For the reasons below, the petition is **DENIED WITHOUT PREJUDICE**.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

### A. Substantive Due Process

Invoking the Fifth Amendment, Gutierrez first claims that he has been detained beyond the bounds of what substantive due process allows. (Doc. 1 at 7.) The Fifth Amendment protects noncitizens during deportation proceedings. At the same time, however, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "[T]he through line of history is recognition of the Government's sovereign authority to set the terms

2

governing the admission and exclusion of noncitizens." *Dep't of State v. Munoz*, 602 U.S. 899, 911-12 (2024). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal order and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

3

Gutierrez cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. 8 C.F.R. § 241.13(i)(2). And the government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, the Government revoked Gutierrez's release specifically to enforce his outstanding removal order. Returning him to custody thus serves a recognized, legitimate government objective.

Nor are we at the constitutional danger zone. ICE detained Gutierrez on March 12, 2026. He has been in custody for just two months. That is short of the indefinite, limbo-like detention that the Supreme Court has rejected under the Fifth Amendment. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). Instead, it falls within the six-month window the *Zadvydas* Court deemed presumptively reasonable to carry out a deportation. *Id.* at 701 (holding that executive agencies may not hold noncitizens longer than six months when removal is not foreseeable and stating, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing").

Gutierrez protests that his removal is not likely in the foreseeable future. (Doc. 1 at 7.) But this argument puts the cart before the horse. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at \*8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at \*12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at \*4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

Gutierrez attempts another workaround. He argues that the six-month reasonable detention period is cumulative, starting when his removal order became final back in 1999. (Doc. 1 at 7.) Using that calculus, the six-month period has long since passed.

This argument makes little sense. *Zadvydas* was aimed at the severe, physical deprivation of liberty that comes from sitting in a jail cell indefinitely. The Court "used the words 'detain' and 'custody' to refer exclusively to physical confinement and restraint." *Jennings*, 583 U.S. at 311. Against that backdrop, it is illogical to run a clock designed to prevent indefinite imprisonment while a person is out living freely in the community. "Because *Zadvydas* clearly involved *detention* of a petitioner during the

5

presumptively reasonable period, it defies common sense to suggest that *Zadvydas* time can run while a petitioner is not in custody." *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala. 2011). The six-month clock measures actual lockup, not supervised freedom. *See Akinwale*, 287 F.3d at 1052 ("[I]n order to state a claim under *Zadvydas* the alien ... must show post-removal order *detention* in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." (emphasis added).)

## B. Procedural Due Process

Gutierrez turns next to the procedural mechanics of his re-detention. As best the Court can tell, he claims that ICE's decision to revoke his supervision violated the Fifth Amendment's guarantee of procedural due process. (Doc. 1 at 7.) The Court cannot agree. To understand why, start with the baseline reality of Gutierrez's legal status. He is a noncitizen subject to a final, unexecuted order of removal who has been convicted of several felonies. His release on supervision was a matter of administrative grace born of logistical necessity, not a permanent constitutional entitlement. When the Government determines that circumstances have changed and it is finally time to carry out its removal order, the Constitution does not demand a full-dress, pre-deprivation trial. Due process, as the Supreme Court has often

6

reminded us, is flexible. It "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

In the context of revoking a noncitizen's supervised release and detaining him, like here, ICE's regulations strike that constitutional balance by guaranteeing written notice and an informal interview that allows the individual to respond. *See* 8 C.F.R. §§ 241.4(l)(1), 241.13(i). According to the unrebutted record, Gutierrez received both. (*See* Doc. 7-2.) He got exactly what the Fifth Amendment requires in this context—notice and a meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The Constitution guarantees a fair process, not a favorable result. Because ICE afforded Gutierrez the requisite notice and an opportunity to be heard, his procedural due process claim fails.

### III. Conclusion

Gutierrez's due process claim under *Zadvydas* is not yet ripe, so the habeas petition is **DENIED WITHOUT PREJUDICE** to him refiling a new petition should his current detention exceed the six-month mark, and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on May 19, 2026.

Kyle C. Dudek
United States District Judge